# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## NO. 2023 CA 1051

## HONEYBEE HOLDINGS, LLC

### VERSUS

## ST. TAMMANY PARISH ZONING COMMISSION AND ST. TAMMANY PARISH GOVERNMENT

*Judgment Rendered:*

MAY 3 1 2024

* * * * * * * *

Appealed from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Case No. 2022-16034, Division I

The Honorable Reginald T. Badeaux, III, Judge Presiding

* * * * * * * *

Tom Easterly
Peyton T. Gascon
Baton Rouge, Louisiana

Counsel for Plaintiff/Appellant
Honeybee Holdings, LLC

J. Collin Sims
District Attorney
Emily G. Couvillon
James J. Bolner, Jr.
Angel L. Byrum
Assistant District Attorneys
Mandeville, Louisiana

Counsel for Defendant/Appellee
St. Tammany Parish Government

Miles P. Clements
Zachary J. Ardoin
New Orleans, Louisiana

Counsel for Intervenor/Appellee
Bayou Liberty Association, Inc.

* * * * * * * *

BEFORE: THERIOT, PENZATO, AND GREENE, JJ.

GREENE, J. concurs with reasons.

**THERIOT, J.**

In this appeal, Plaintiff, Honeybee Holdings, LLC ("Honeybee"), seeks review of a trial court judgment sustaining several exceptions filed by Defendant, St. Tammany Parish Government ("STPG"), and dismissing Honeybee's petition for issuance of a writ of mandamus. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

According to the allegations in the petition, Honeybee owns approximately 275 acres of undeveloped property situated in St. Tammany Parish. This tract of land is zoned as TND-2 Traditional Neighborhood Development ("TND-2"). Per this designation, the land may be developed for the purpose of establishing a compact, walkable, mixed-use neighborhood where residential, commercial, and civic buildings are within close proximity to each other. See St. Tammany Parish Unified Development Code ("UDC"), Section 130-1511. Prior to the issuance of any permits for development of land zoned as TND-2, the UDC requires that the following four steps be completed: (1) pre-application conference; (2) approval of general implementation plan ("GIP") by the St. Tammany Parish Zoning Commission ("Zoning Commission") and St. Tammany Parish Council ("STP Council"); (3) approval of a specific implementation plan by the planning commission; and (4) approval of a final plat by the planning commission. See UDC, Section 130-1516(a).

Honeybee began the process of developing the land in accordance with its existing zoning designation in 2020.[1] In its petition, Honeybee alleged it completed the first step of the TND-2 development process, and no objections to the proposed project were presented during or after the required conference.

---

[1] Honeybee alleged that staff members of the St. Tammany Parish Department of Planning and Development originally advised it to seek alternative zoning status because the TND-2 process "was novel and unfamiliar." At that time, no property zoned TND-2 had been approved and developed in St. Tammany Parish. After Honeybee filed a request to rezone the property as advised, the Zoning Commission and then the STP Council denied Honeybee's request, and Honeybee proceeded with development under the land's current zoning designation.

2

Honeybee then proceeded to the next step in the development process by submitting its first GIP on March 25, 2022. Honeybee alleged that it had several conferences with the St. Tammany Parish Department of Planning and Development ("the Department") "for the purpose of exchanging information and determining the eligibility of the request for consideration as a traditional neighborhood development." The director of the Department later recommended a public workshop be held on July 19, 2022, to allow members of the Zoning Commission, STPG officials, Honeybee's development team, and members of the general public to discuss the project. At that time and after, Honeybee alleged STPG officials were "inconsistent with their 'guidance'" to Honeybee as it relates to the TND-2 application process.

Honeybee submitted the final version of its GIP on October 6, 2022. Honeybee alleged in its petition that its final GIP "was in compliance with all requirements and recommendations imposed by the [UDC] and/or requested by the Department . . . and [STPG] Officials" in the GIP submittal checklist they provided. Thereafter, the Department issued a Zoning Staff Report regarding Honeybee's GIP, which Honeybee alleged "cited no deficiencies in the [GIP] based upon the pertinent [UDC] provisions applicable to a property zoned TND-2." The Zoning Staff Report did, however, suggest that Honeybee increase the amount of land proposed for commercial and civic uses, or alternatively, decrease the proposed density of the development, because the proposed 10,000 square feet of commercial space would not meet the daily needs of residents and would not accomplish the purpose of the TND-2 ordinances. This recommendation was made despite acknowledgement that "the TND-2 Ordinance [in the UDC] does not require a specific amount of commercial or civic uses."

The Zoning Commission held a public hearing on November 2, 2022, to decide whether to approve, approve with conditions, or deny Honeybee's GIP

3

application. General objections to the project were offered by nearby residents, and the Zoning Commission ultimately recommended denial of Honeybee's request for approval of its GIP. Honeybee filed a timely appeal of the Zoning Commission's decision to the STP Council pursuant to Section 130-1528 of the UDC.[2] The appeal came for public hearing before the STP Council on December 1, 2022. Again, nearby residents spoke against Honeybee's GIP, citing concerns related to drainage, traffic, and perceived lack of retail and commercial space, among other things. The STP Council voted to concur with the Zoning Commission's recommendation and denied the GIP.

Honeybee then filed a petition for issuance of a writ of mandamus, naming STPG and the Zoning Commission as defendants, at the 22nd Judicial District Court. Therein, Honeybee sought a judgment compelling STPG and/or the Zoning Commission to provide written reasons for the denial of its GIP and/or compelling the approval of its GIP, which it characterized as a purely ministerial duty. According to Honeybee, the denial of its GIP concerns a "use by right" of its land, and as such, an application for approval of a development plan in conformity with all zoning and use requirements is "presumptively valid and approved." Therefore, Honeybee asserted STPG's denial of its GIP was arbitrary and capricious as it was not based upon issues related to public safety, health, or general welfare. Honeybee further alleged that "[t]he delays associated with an ordinary proceeding via statutory appeal and/or petition for judicial review . . . would unreasonably jeopardize existing contractual rights belonging to Honeybee." Thus, Honeybee maintained that "imposition of such an injustice upon Honeybee allows Honeybee

---

[2] Section 130-1528 of the UDC states, in pertinent part:

> An applicant may appeal the findings and recommendations of the commissions or director of planning and development, as applicable, by filing an objection in writing to the council within five days of receipt of the commissions' or director of planning and development's recommendations. The council shall grant or deny the appeal, and the council's decision shall be final.

to seek a writ of mandamus as its remedy." Honeybee also prayed for "all other general and equitable relief."

In response to Honeybee's petition, STPG and the Zoning Commission filed several exceptions, including dilatory exceptions raising the objections of unauthorized use of summary proceedings and improper cumulation and the peremptory exception raising the objection of no cause of action.[3] In its exceptions, STPG characterized Honeybee's GIP as an application for a change of the zoning designation of the land. STPG maintained the property is currently designated as "TND-2 Concept." Pursuant to the UDC, the official zoning maps will be changed upon approval of a GIP to classify the area as "TND-2 Planned." Then, upon final approval, the property is designated as "TND-2." Thus, STPG asserted that, because Honeybee sought to change the designation of the property from TND-2 Concept to TND-2 Planned, and later TND-2, Honeybee "applied for a zoning change." Since STPG exercises much discretion over zoning decisions, see La. R.S. 33:4721, et seq. & La. R.S. 33:4780.40, et seq., STPG asserted mandamus is not available to compel approval of Honeybee's GIP and urged the trial court to dismiss Honeybee's petition.

Honeybee opposed the exceptions. Honeybee first challenged STPG's characterization of the GIP as a rezoning application and instead maintained that it is seeking to develop the land in conformity with its existing TND-2 zoning designation. Further, Honeybee asserted that the TND-2 application process is governed by objective zoning requirements in the UDC; therefore, Honeybee asserted STPG was required to approve its GIP upon presentation of the required documentation and completion of all requisite steps outlined in the UDC and GIP submittal checklist. In other words, Honeybee argued that the action it seeks to

---

[3] STPG and the Zoning Commission also asserted the dilatory exception raising the objection of lack of procedural capacity on behalf of the Zoning Commission. At the hearing, the parties stipulated to the dismissal of Honeybee's claims against the Zoning Commission, rendering the exception of lack of procedural capacity moot.

5

compel from STPG is a ministerial duty, i.e., is not discretionary, thereby rendering mandamus an appropriate remedy. Alternatively, Honeybee argued that jurisprudence supports the use of mandamus "as [a] vehicle to exercise its constitutionally protected right to use its [p]roperty in accordance with reasonable and applicable restrictions – a right which [STPG] has arbitrarily and capriciously denied." In conclusion, Honeybee maintained STPG's exceptions should be overruled because Honeybee's petition "asserts material factual allegations which, if proven, entitle Honeybee to the issuance of a writ of mandamus."

The trial court held a hearing on the exceptions on March 8, 2023. At the conclusion of the hearing, the trial court took the matter under advisement. The trial court issued a written judgment signed on May 17, 2023. The judgment sustained all exceptions, dismissed Honeybee's suit with prejudice, and adopted STPG's memorandum in support of its exceptions as the written reasons for the dismissal of Honeybee's petition. This timely appeal followed. In a single assignment of error, Honeybee asserts the trial court erred by sustaining STPG's exceptions "given the detailed allegations of arbitrary and capricious conduct contained in Honeybee's petition" and STPG's failure to supply reasons for the denial of Honeybee's GIP.

## APPLICABLE LAW AND STANDARD OF REVIEW

### I. No Cause of Action

The purpose of the peremptory exception raising the objection of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. **Singleton v. East Baton Rouge Parish School Board**, 2022-0667 (La. App. 1st Cir. 9/16/22), 353 So.3d 164, 175. The purpose of the exception of no cause of action is not to determine whether the plaintiff will ultimately prevail at trial, but to only ascertain if a cause of action exists. **Id.** The trial court must presume all well-pleaded facts are true

for purpose of an exception of no cause of action. **Midland Funding LLC v. Welch**, 2022-0823 (La. App. 1st Cir. 2/24/23), 361 So.3d 1022, 1026.

The exception of no cause of action is triable only on the face of the petition and any attached documentation,[4] and no evidence may be introduced to support or controvert the objection.[5] **Id.** at 1026; La. Code Civ. P. art. 931. The burden of demonstrating that a petition fails to state a cause of action is on the exceptor, and an appellate court reviews a denial of an exception of no cause of action *de novo*. **Midland Funding**, 361 So.3d at 1026.

**II. Mandamus**

In this case, STPG filed exceptions to the mandamus action initiated by Honeybee. The general mandamus article of the Louisiana Code of Civil Procedure defines mandamus as "a writ directing a public officer, a corporation or an officer thereof, or a limited liability company or a member or manager thereof, to perform any of the duties set forth in Articles 3863 and 3864." La. Code Civ. P. art. 3861. A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. La. Code Civ. P. art. 3863. A ministerial duty is one in which no element of discretion is left to the public officer; in other words, it is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law. If a public officer is vested with any element of discretion, however slight, mandamus will not lie. **Lowther v. Town of Bastrop**, 2020-01231 (La. 5/13/21), 320 So.3d 369, 371; **Istrouma**

---

[4] In this case, Honeybee attached several documents to its petition, including the original and revised GIPs and the GIP submittal checklist provided by STPG officials. All of these documents may be considered in our *de novo* review of STPG's exception of no cause of action. See **Midland Funding**, 361 So.3d at 1026.

[5] The jurisprudence recognizes an exception to this rule, which allows the court to consider evidence admitted without objection. In those instances, the pleadings are considered to have been enlarged. **Beem v. Beem**, 2020-0897 (La. App. 1st Cir. 4/20/21), 324 So.3d 682, 686. The parties herein introduced evidence at the hearing on the exceptions without objection and without identifying the exceptions being supported by the evidence. Because there were several exceptions pending before the court, including those for which evidence may be admitted, we decline to find the parties enlarged the pleadings for purposes of the exception of no cause of action.

**Foods, LLC v. Iberville Parish Sales & Use Tax Department**, 2019-0867 (La. App. 1st Cir. 12/27/19), 292 So.3d 966, 968-69, writ denied, 2020-00097 (La. 3/9/20), 307 So.3d 1029. Generally, the only circumstances under which courts may cause writs of mandamus to issue are where the actions sought to be performed are imposed by law and are purely ministerial in nature. See **Pineville City Court v. City of Pineville**, 2022-00336 (La. 1/27/23), 355 So.3d 600, 604.

Despite a lack of a ministerial duty, mandamus may still be proper under certain circumstances. In **State ex rel. Torrance v. City of Shreveport**, 93 So.2d 187 (La. 1957), the Louisiana Supreme Court addressed the court's ability to correct the arbitrary and capricious acts of public officials through mandamus. The **Torrance** court stated:

> While it is the general rule that mandamus may be invoked only to coerce performance of duties that are purely ministerial in nature, it is well settled in this state as well as in other jurisdictions that the writ may also be employed to reach and correct an arbitrary or capricious abuse of discretion by public boards or officials.

**Id.** at 189. Generally, the action of a governmental body is arbitrary, capricious, and unreasonable if it bears no relation to the health, safety, or general welfare of the public. **City of Baton Rouge v. Douglas**, 2016-0655 (La. App. 1st Cir. 4/12/17), 218 So.3d 158, 163. This court has continued to acknowledge this exception to the ministerial requirement for mandamus as announced in **Torrance**. See **Salinger Group, Inc. v. City-Parish of East Baton Rouge**, 2019-0295 (La. App. 1st Cir. 7/24/20), 309 So.3d 373, 382; **Istrouma Foods, LLC**, 292 So.3d at 969; **City of Baton Rouge**, 218 So.3d at 163.

### III. Applicable UDC Ordinances

A local government's legislative authority to adopt regulations for land use, zoning, and historic preservation is expressly set forth in La. Const. art. VI, § 17. Local government zoning is authorized by the Louisiana legislature in La. R.S.

33:4721, *et seq.* and La. R.S. 33:4780.40, *et seq.* The UDC was enacted pursuant to this authority. See UDC, Section 130-1(b).

The ordinances relevant to this appeal are those governing TND-2 zoning. See UDC, Section 130-1509, *et seq.* The UDC states the "purpose" of a TND-2 Traditional Neighborhood Development Zoning District is "to encourage mixed-use, compact development and facilitate the efficient use of services"; to diversify and integrate land uses within close proximity to each other; and to provide for "the daily recreational and shopping needs of the residents." See UDC, Section 130-1509. Other standards include walkability and proximity to existing or proposed commercial and civic spaces. See UDC, Section 130-1510(c), (g), & (i); Section 130-1512(c)(2). Pertinently, Section 130-1510 describes a "neighborhood center area" as a key component of TND-2 developments and "the focal point of a TND-2 district, containing retail, commercial, civic, and/or public services to meet the daily needs of community residents." UDC, Section 130-1510(b) & (c). Section 130-1510(c) further provides:

> A neighborhood center is pedestrian-oriented, and it is designed to encourage pedestrian movement. A square may be located in a neighborhood center area. Retail and commercial uses should generally be located adjacent to the square. The neighborhood center uses include retail shops, restaurants, offices, banks, hotels, post office, governmental offices, churches, community centers, and attached residential dwellings.

Section 130-1511 of the UDC, titled "TND-2 district definitions," identifies three designations within the TND-2 framework. It states:

> For purposes of this division only, the following definitions shall be observed and applied, except when the context clearly indicates otherwise.
>
> . . .
>
> *Traditional neighborhood or traditional neighborhood development* means a compact, walkable, mixed-use neighborhood where residential, commercial and civil buildings are within close proximity to each other as contemplated under this chapter.

9

(1) *TND-2 Concept.* The designation of property for development as a traditional neighborhood development through the comprehensive rezoning process or in accordance with the time limitations and procedures set forth in section 130-1531.

(2) *TND-2 Planned.* The designation for development as a traditional neighborhood development following approval of the general implementation plan.

(3) *TND-2.* The redesignation of property for "TND Planned" on the official map, upon approval of a specific implementation plan and the final plat.

Section 130-1518 of the UDC specifically relates to GIPs and provides:

> Following the pre-application conference, the applicant shall submit a completed application (general implementation plan) to the director of planning and development. When the director of planning and development determines the application to be complete, the application shall be sent to the commission for a public workshop session if deemed necessary by the director of planning and development, followed at a later date by a public hearing. The general implementation plan shall contain all information required in the general implementation plan checklist, including architectural design guidelines as described in section 130-1512(j).

> (1) *Procedures for general implementation plan approval.* All applications for traditional neighborhood developments shall be processed in the following manner:

> a. The general implementation plan shall follow the procedures for approval of planning items before the planning commission and zoning cases before the zoning commission and the council which are not in conflict with this section.

> b. At least 14 days prior to review and determination by the commissions, all abutting property owners shall be notified by regular mail of the traditional neighborhood development and given an opportunity to submit written comments. Notice shall also be published in the parish's official journal at least ten days prior to the review.

> c. Following required public notice, the commissions shall hold a public hearing on the proposed traditional neighborhood development. Following the hearing, the commissions shall review [the] traditional neighborhood development request and general implementation plan and any comments submitted by any adjoining property owners and shall make a recommendation to the council to approve, approve with conditions, or deny the general implementation plan. In its recommendation to the council, the commissions shall include the reasons for such recommendation.

> (2) *Approval of a general implementation plan.*

a. After receiving the recommendation of the commissions, the council shall review the application, including the general implementation plan, the record of the commissions' proceedings and the recommendation, and shall approve, approve with conditions, or deny the application in accordance with the standards and purposes set forth in sections 130-1509, 130-1510 and 130-1512. An approval with conditions shall not be considered final (and the rezoning is not final until such time) until the applicant submits a written acceptance of the conditions and all necessary revisions to the general implementation plan to the council.

b. If approved by the council, the general implementation plan and all other information and material formally submitted with the application shall be adopted as an amendment to this development code and shall become the standards of development for the traditional neighborhood development. All future development shall conform to the standards adopted for the traditional neighborhood development regardless of changes in ownership.

c. Upon approval of the general implementation plan, the property shall be designated "TND-2 Planned" on the official zoning map.

Sections 130-1530 and 130-1531(a) of the UDC provide additional guidance regarding TND-2 zoning.

Sec. 130-1530. - Relation to zoning districts.

An approved traditional neighborhood development shall be considered to be a separate zoning district in which the development plan, as approved, establishes the restrictions and regulations according to which development shall occur, and may depart from the normal procedures, standards, and other requirements of the other sections of the zoning ordinance and subdivision regulations to the extent provided herein. Upon approval of the general implementation plan, the official zoning map will be changed to indicate the area as "TND-2 Planned," or if final approval [is] granted then as "TND-2." Every approval of a traditional neighborhood development shall be considered an amendment to the zoning ordinance.

. . .

Sec. 130-1531. - Comprehensive rezoning and subsequent designation procedure.

(a)Any property designated as traditional neighborhood development as part of the comprehensive rezoning process shall be designated as "TND-2 Concept," until said property has undergone the application

procedure and approval process as outlined in section 130-1516, except that in such cases, the commission decision relative to the general implementation plan will be considered the final determination, subject to appeal to the parish council in accordance with section 130-1528.

## DISCUSSION

The crux of this appeal is whether the UDC ordinances governing the approval or denial of TND-2 GIPs involve the exercise of discretion by STPG, and if so, whether that discretion was exercised in a fair and legal manner. In order to make this determination, we turn to the rules of general statutory construction. Legislation is a solemn expression of legislative will. La. Civ. Code art. 2. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislation. La. Civ. Code art. 9. In examining a law, language, words, and phrases are to be read in their context and to be accorded their generally prevailing meaning. La. Civ. Code art. 11; La. R.S. 1:3; **Lester v. BREC Foundation**, 2022-0514 (La. App. 1st Cir. 11/4/22), 356 So.3d 18, 24, <u>writ denied</u>, 2023-00019 (La. 3/7/23), 357 So.3d 351. It is presumed that every word, sentence, or provision was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found. **Lester**, 356 So.3d at 24.

A plain reading of UDC, Section 130-1518 shows that an element of discretion inheres in the Zoning Commission and the STP Council when deciding whether to approve or deny GIPs. After a public hearing, the Zoning Commission must review the TND-2 request and GIP as well as any comments submitted by adjoining property owners and shall make a recommendation to the STP Council to

12

approve, approve with conditions, or deny the GIP. UDC, Section 130-1518(1)(c). Section 130-1518(2)(b) of the UDC likewise gives the STP Council the option to "approve, approve with conditions, or deny the application in accordance with the standards and purposes set forth in sections 130-1509, 130-1510 and 130-1512" of the UDC. Sections 130-1509, 130-1510, and 130-1512 of the UDC state the "purpose" of a TND-2 Traditional Neighborhood Development Zoning District is "to encourage mixed-use, compact development and facilitate the efficient use of services"; to diversify and integrate land uses within close proximity to each other; and to provide for "the daily recreational and shopping needs of the residents." See UDC, Section 130-1509. Other standards outlined in Sections 130-1510 and 1512 include walkability and proximity to existing or proposed commercial and civic spaces. See UDC, Section 130-1510(c), (g), & (i); Section 130-1512(c)(2). As Honeybee alleged in its petition, the Zoning Staff Report suggested that Honeybee increase the amount of land proposed for commercial and civic uses because the proposed 10,000 square feet of commercial space would not meet the daily needs of residents and would not accomplish the purpose of the TND-2 ordinances. Therefore, Honeybee's GIP did not meet the purposes of a TND-2 set forth in the UDC and was denied.

Further, Honeybee's interpretation of Section 130-1518 suggests that, upon completeness, the GIP should be approved as a matter of law. However, the introductory paragraph of UDC, Section 130-1518 states that it is the director of the Department who must review the GIP for completeness, and only then is the GIP presented to the Zoning Commission and/or STP Council.[6] Under Honeybee's

---

[6] Honeybee asserts that land use regulations must contain uniform and objective requirements and are unconstitutional to the extent they afford municipal bodies and/or governmental actors with discretion in their applications. The pertinent sections of the UDC do not specify the percentage of land that must be dedicated to commercial space. These sections also give the STP Council the discretion to determine whether to approve a GIP in accordance with the "standards and purposes" for a TND-2 development set forth in the UDC. Honeybee has not asserted a constitutional challenge to the pertinent sections of the UDC, and the issue before us is limited to

reading of Section 130-1518, the requirements of a public hearing and review by the Zoning Commission and the STP Council would be an exercise in futility, and, thus, this requirement would be meaningless.[7] For these reasons, we find GIP approval per UDC, Section 130-1518 is a discretionary act not generally subject to writ of mandamus.

Still, a public officer's discretion must be exercised in a fair and legal manner and not arbitrarily, and a writ of mandamus may issue to correct arbitrary and capricious actions of public officials. See **Great Lakes Dredge & Dock Co., LLC v. State ex rel. Coastal Protection & Restoration Authority**, 2014-0249 (La. App. 1st Cir. 11/7/14), 167 So.3d 682, 686. Thus, we must consider whether Honeybee sufficiently pled a cause of action for mandamus due to improper and arbitrary exercise of discretion by STPG.

Honeybee alleged in its petition that the denial of its GIP concerns a "use by right" of its land. As such, Honeybee maintained that an application for approval of a development plan in conformity with all zoning and use requirements is "presumptively valid and approved."[8] According to Honeybee, denial of its GIP denies Honeybee the right to use its land in accordance with validly enacted zoning

---

whether Honeybee's petition stated a cause of action for mandamus. Therefore, we find Honeybee's arguments concerning constitutional requirements are misplaced.

[7] Honeybee argues STPG's interpretation of the relevant ordinances would strip Honeybee of any use of its property as a matter of right. If a statute is susceptible of two constructions, one of which would render it unconstitutional, or raise grave constitutional questions, the court should adopt the interpretation of the statute which, without doing violence to its language, will maintain its constitutionality. **City of New Orleans v. Louisiana Assessors' Retirement & Relief Fund**, 2005-2548 (La. 10/1/07), 986 So.2d 1, 12-13, on reh'g (Jan. 7, 2008). Honeybee asserts that STPG's reading of the ordinance is unconstitutional and therefore cannot be a viable interpretation. However, Honeybee negates this argument by repeatedly stating in its briefing to this court and to the trial court that it is not contesting the constitutionality of the UDC ordinances on TND-2 developments. Since appellate courts may not address issues raised for the first time on appeal, see **MedImpact Healthcare Systems, Inc. v. Division of Administration**, 2021-1367 (La. App. 1st Cir. 6/3/22), 343 So.3d 705, 714, we decline to address this argument.

[8] Whenever a property owner seeks to use his or her land in compliance with the applicable zoning, requiring no variances or special uses, and conforming to every modification imposed by law, that property owner is seeking to exercise his or her "use by right." See **Zachary Housing Partners, L.L.C. v. City of Zachary**, 2012-1952 (La. App. 1st Cir. 10/10/13), 185 So.3d 1, 7, writ denied, 2013-2615 (La. 2/7/14), 131 So.3d 864. In a situation when a landowner seeks a use by right, the use by right should be presumptively valid and approved. **Id.** at 8.

ordinances. Therefore, Honeybee asserted STPG's denial of its GIP was arbitrary and capricious because it was not based upon issues related to public safety, health, or general welfare.

Honeybee argues that the denial of its "use by right" is a basis for finding STPG acted arbitrarily and capriciously in denying its GIP; however, we find this argument is simply another basis on which Honeybee asserts STPG did not have discretion to deny its GIP. Honeybee relies on a case from this court, **Zachary Housing Partners, L.L.C. v. City of Zachary**, 2012-1952 (La. App. 1st Cir. 10/10/13), 185 So.3d 1, 7, writ denied, 2013-2615 (La. 2/7/14), 131 So.3d 864, which we find distinguishable. In **Zachary Housing Partners**, the plaintiff sought to construct an apartment complex on a tract of land within the city limits of Zachary. **Id.** at 3. The property was zoned as Residential/Urban and Residential/Estate, which allowed for the development of a residential complex such as the one proposed by the plaintiff. In accordance with the City's UDC, the plaintiff submitted applications for site plan review and resubdivision. At a pre-application conference, the plaintiff was advised that the City's comprehensive master plan and future land use plan map designated the future land use of the property as Agricultural and Forestry. Nevertheless, the City accepted the plaintiff's applications and proceeded with the development process. At the conclusion of a public hearing before the Zachary Planning Commission, the Commission voted to approve the plaintiff's applications with conditions. **Id.** Thereafter, the plaintiff's applications were set for public hearing before the Zachary City Council. **Id.** at 4. The City Council voted to deny the plaintiff's plan application and resubdivision application based on its incompatibility with the designated future planned use of the property. **Id.**

Following the denial of its applications, the plaintiff filed a petition for mandamus, declaratory judgment, and other relief. **Id.** At the trial on the writ of

15

mandamus, the City stipulated that the sole articulated reason for the denial of the plaintiff's applications was "incompatibility" with the City's master plan for the future use of the property. **Id.** at 6-7. The trial court ultimately ruled in favor of the plaintiff, made the writ of mandamus peremptory, and ordered the Zachary City Council to approve the site plan and resubdivision applications. **Id.** at 4. This court affirmed. **Id.** at 8.

**Zachary Housing Partners** is distinguishable because, therein, the City stipulated that "the sole articulated reason for the denial of [the plaintiff's] applications was 'incompatibility' with the City's Master Plan," i.e., the land's future zoning designation. **Id.** at 6-7. In other words, there was no dispute that the applications complied with the applicable zoning ordinances and conformed to every modification imposed and approved by the City's Planning Commission. See **Id.** at 8. In contrast, according to Honeybee's petition, the Zoning Staff Report provided reasons why Honeybee's GIP was *not compliant* with the applicable zoning ordinances, including that the amount of proposed commercial space was insufficient to meet the daily needs of its residents, which is an explicitly stated purpose of a TND-2 development in the UDC. As articulated in **Zachary Housing Partners**, a use by right requires *compliance* with zoning ordinances and *conformity to* every modification imposed and approved by the planning and zoning commissions. See **Id.** at 7. Absent an allegation that STPG denied Honeybee's GIP despite incorporating the modifications suggested by STPG, it cannot be said that STPG denied Honeybee a "use by right" of its land. For the above reasons, we find Honeybee did not sufficiently plead a cause of action for mandamus ordering STPG to approve its GIP.

Honeybee's petition for issuance of a writ of mandamus also sought to compel the Zoning Commission and/or the STP Council to provide reasons for their denial of its GIP. The UDC states the Zoning Commission *shall* make a

16

recommendation to the STP Council to approve, approve with conditions, or deny the GIP, and the recommendation *shall* include the reasons for such recommendation. UDC, Section 130-1518(1)(c). However, there is no requirement in the ordinances that the reasons be supplied in writing or any other specific format. Additionally, the UDC requires only that, "[i]n its recommendation to the council, the commissions shall include the reasons for such recommendation." UDC, Section 130-1518(1)(c). The UDC does not impose a ministerial duty upon STPG, through the Zoning Commission or the STP Council, to provide an applicant, like Honeybee, with reasons for its recommendation or action on the GIP. As such, we also find no cause of action for mandamus ordering STPG to provide reasons for its denial of Honeybee's GIP and therefore affirm the trial court's judgment sustaining STPG's exception of no cause of action.[9]

Louisiana Code of Civil Procedure Article 934 provides, "When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court." Honeybee did not request the opportunity to amend either at this court or the trial court. Therefore, the issue is waived. See **Martin v. Board of Adjustment Through Chairman**, 2023-0658 (La. App. 1st Cir. 2/23/24), ___ So.3d ___, ___, 2024 WL 741590, *4 n.9, citing **Stolzle v. Clayton**, 2018-1641 (La. App. 1st Cir. 7/11/19), 280 So.3d 1240, 1244, writ denied, 2019-01745 (La. 1/14/20), 291 So.3d 679.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court that sustained the peremptory exception raising to objection of no cause of action filed by

---

[9] Because we affirm the trial court's dismissal of Honeybee's petition, we pretermit discussion pertaining to STPG's exceptions of improper use of summary proceedings and improper cumulation. These exceptions are rendered moot.

Defendant/Appellee, St. Tammany Parish Government, and dismissed the lawsuit filed by Honeybee Holdings, LLC with prejudice is affirmed. All costs of this appeal are assessed to Plaintiff/Appellant, Honeybee Holdings, LLC.

**AFFIRMED.**

# STATE OF LOUISIANA
# COURT OF APPEAL
# FIRST CIRCUIT

# DOCKET NUMBER
# 2023 CA 1051

# STATE OF LOUISIANA

# HONEYBEE HOLDINGS, LLC

# VERSUS

# ST. TAMMANY PARISH ZONING COMMISSION
# AND ST. TAMMANY PARISH GOVERNMENT

**GREENE, J., concurring.**

I agree with the result of the majority opinion. I write separately, however, to note my disagreement with the opinion's footnote 7, wherein the majority states that Honeybee is raising the constitutionality of STPG's interpretation of certain ordinances for the "first time" on appeal.